## No. 11,373.

### STATE OF LOUISIANA VS. KID NASH AND KID BARNETT.

The defendant has no right to a postponement of his case to await the result of the trial of another case.

There was nothing to show that there was any feeling, opinion or prejudice as would prevent a fair trial in selecting the tales jurors in the manner they were selected.

Reason and authority sustain the right of the court to discharge a jury in cases of physical or moral necessity.

After a juror has been accepted, if it be discovered that he is incompetent to serve he may, in the exercise of a sound discretion, be set aside by the court at any time before evidence goes to the jury.

Jeopardy can not begin before the case is opened before the jury and the indictment is read. At what time thereafter it begins, it is not essential to decide in this case.

1. In this State the right of the accused in a criminal case to introduce testimony as to threats on the part of the deceased, and as to his character as a violent, quarrelsome man, is not absolute. Such testimony is only exceptionally admissible, and the condition precedent upon which it is admissible is that the district judge should have found that under the evidence in the case as a whole the question of the commission by the deceased of an overt act had been proved and had become legally a relevant fact. In dealing with that question this court has repeatedly recognized the right of the District Court to pass upon the credibility of the witnesses.

2. If the bill of exceptions taken to the refusal of a district judge to admit such evidence shows that even if certain testimony which he had declined to have reduced to writing at the request of the accused had been embodied in full in the bill it would be insufficient to break the force of the recitals of the judge as to the other testimony in the case on which he rested his conclusions for excluding the evidence, the refusal to have such particular testimony reduced to writing would not be reversible error, the correctness of the judge's statements as to this other testimony not being controverted.

APPEAL from the First District Court, Parish of Caddo. *Taylor, J.*

*John R. Land,* District Attorney, and *Wise & Herndon* for the State, Appellee:

1. The two defendants, jointly indicted for murder, obtained a severance in their trials. It was in the power of the prosecuting attorney to determine in what order he would try them. Bish. on Cr. Pr., Sec. 1018.

2. It was not error in the trial judge to refuse to instruct the sheriff to summon tales jurors from a designated portion of the parish. Act No. 84 of Acts 1873; 14 An. 461; 23 An. 148; 26 An. 46; 32 An. 1003; 34 An. 1084; 35 An. 303.

3. The court may discharge an obnoxious or unfit juror, even after the jury has been empaneled and sworn, if no evidence has been introduced. Thompson & Merriam on Juries, Sec. 275; 34 An. 919, and cases cited; 29 An. 642; 39 An. 868.

   A large judicial discretion is given the trial judge in passing on the qualifications of jurors, and his ruling in such a matter will not be set aside by the appellate court unless the error is manifest. 34 An. 991, 1195; 38 An. 480; Thompson & Merriam, Sec. 252; 98 U. S. 145.

   Persons who entertain conscientious scruples against capital punishment are incompetent jurors. 11 An. 535, 685; 30 An. 367; 34 An. 919.

4. When a juror is discharged before any evidence is heard the remaining jurors need not be re-sworn, and the defendant was not entitled to his peremptory challenges over again. 39 An. 868.

5. Jeopardy does not attach whenever a case can not be proceeded with by reason of some physical or moral necessity arising from no fault or neglect of the State. In such case the trial may be stopped and the defendant will not be protected from being afterward tried upon the same indictment. Vol. 39 American Reports, p. 424, and cases cited; United States vs. Perez, 9 Wheaton, 579; 8 R. 506; Wharton's Cr. Pl , Sec. 447; 1 Bish. Cr. Pr., Sec. 809; 3 An. 715; 5 An. 398; 39 An. 470; 35 An. 483; 33 An. 1410; 35 An. 341; 11 An. 284.

   Jeopardy is waived by defendant asking for a new trial. 1 Bish. Cr. Law, Secs. 995, 1001, 1003.

   Defendant can not protect himself from the effect of this waiver resulting from asking a new trial by asking for an appeal from the ruling of the court on that point.

   In criminal cases appeals lie only from verdict, judgment and sentence. 15 An. 347; 22 An. 460; 29 An. 306; 37 An. 62; 32 An. 527.

6. The accused is not entitled to have the testimony of witnesses reduced to writing involving only questions of fact and relating to the merits of the case. He is entitled to have the testimony reduced to writing for the purpose of annexing it to a bill of exception for review by the appellate court. to obtain a ruling upon questions of law on which he relies for relief, not on questions of fact. 41 An. 143.

---

*M. C. Elstner* and *Hicks & Hicks* for Defendant and Appellant:

1. The rule is, that one accused of a capital crime before a competent court is in jeopardy the instant that the petit jury is selected, empaneled and sworn to try, and true deliverance make; unless by some overruling necessity the jury are discharged without a verdict; or other matter exists that the defendant can make grounds for a new trial if the verdict be against him.

   And a juror is competent to try a capital case who is opposed to capital punishment; and even if he committed a fraud upon the State, it did not authorize his removal.

2.. After an unqualified verdict of guilty in a capital case, jeopardy is not waived by a motion for rehearing, and a motion for an appeal, both of which applications were denied.

3. After the selecting, empaneling and swearing a jury in a capital case, one of the jurors was removed without the consent of the defendant, and against the protest of his counsel, and the court ordered the case to proceed to the selection of another juror to fill the place of the juror removed, who with the remaining eleven jurors is to compose the panel, the defendant is entitled to his peremptory challenges as to the eleven as well as to others offered him, although he had exhausted his challenges in making the first jury.

4. The defendant is entitled, as of right, to have reduced to writing and made part of the record, for the purposes of review in the appellate court, all the evidence upon which the trial judge bases his opinion as to the admissibility or inadmissibility of evidence offered during the progress of the trial. State vs. Nelson, 32 An. 842; State vs. Seiley, 41 An. 143; State vs. Nash et al., 45 An. 1157.

The opinion of the court was delivered by

BREAUX, J.   The defendants were jointly indicted, tried and convicted of murder.

The sentence was annulled at the last term of court at Opelousas and the case remanded for a new trial.   45 An. 1137.   A severance having been granted on the district attorney's election the defendant Nash was placed on trial.

His counsel, who also represented the co-defendant, Barnett, moved that the case against him be tried, and stated that they were not ready to try Nash.

To the court's refusal to interfere and to grant the application for postponement the defendant Nash excepted, and urged that he could not safely go to trial without the testimony of his co-defendant, whose testimony would be to him more material and important after the trial, whether acquitted or convicted, than when the charge was pending against him.

The *venire* for the term having been exhausted, the defendant applied for the summoning of talesmen outside of the limits of Shreveport and of the Fourth Ward, in which he urged there is a deep seated prejudice, that would render it impossible for him to secure an impartial jury.

The jury had been empaneled to try the case and placed in the sherff's custody, and remained from the evening on which they had been so empaneled until the day following, when the district attorney in a written application moved for the discharge of one of the jurors on the ground that on his

*voir dire*, in answer to questions propounded to him by the counsel representing the State, he had testified and said, among other things, that he had no conscientious scruples against finding a verdict that would entail capital punishment; that in truth he was opposed to capital punishment, and so announced to several persons shortly before he was called into the jury box, which fact was unknown to the State, and that by false statements he was accepted and sworn.

The court, after hearing evidence, granted the application and discharged the juror.

The defendant filed an application for his discharge on the ground of former jeopardy.

The court refused to grant the application and to discharge the defendant.

After the court had discharged the juror, C. A. Hays, and had refused to discharge the defendant and had ruled that the district attorney could have another juror selected, the defendant claimed the right of peremptory challenge, which was refused by the court.

The court held that the defendant had exhausted his peremptory challenges and that the number of challenges could not be increased under any circumstances.

Upon the trial application was made by counsel for the defendant to have reduced to writing and made part of the record all the evidence bearing upon the question of overt act, or hostile demonstration at the time or preceding the homicide, for the purpose of laying the foundation enabling him to prove threats, communicated and uncommunicated, against his life, and to prove the character of the deceased as a dangerous, quarrelsome and vindictive man.

The defendant alleged error to his great injury and prejudice and the violation of his legal and constitutional right on the part of the court in not having maintained his plea of "former jeopardy" and offered to file an application for rehearing on his motion to discharge on the ground of former jeopardy, which the court refused to receive.

An appeal was applied for from the court's action in refusing to discharge the accused.

He was found guilty as charged. A new trial and a motion in ar-

rest of judgment were overruled. From the verdict, sentence and judgment, the defendant prosecutes this appeal.

### ORDER OF THE TRIAL.

The records do not disclose that the case was called out of the order of fixing, irregularly to the prejudice of the defendant. The district attorney's action was within the court's direction and control and involves the performance of a duty with which it is not improper to entrust him.

There was no reason suggested to depart from the general rule conferring upon him the right to determine the order in which criminal cases shall be tried. Relative to the postponement, the application involved a postponement to await the result of a trial of a co-defendant, after a severance has been granted. Such a postponement in order that an accused may be called as a witness, is not a legal right. If there be any advantage, it is not one which can control the State in the trial of cases.

A motion for postponement to await the result of a trial was refused in the case of State vs. Ford, 37 An. 456.

### REFUSAL OF COURT TO ORDER TALES JURORS FROM COUNTRY WARDS.

The court, in declining to issue the order applied for and to designate localities or wards from which to select talesmen, is sustained by the law upon the subject.

In the reasons for the ruling, it is stated that there was nothing to show that any feeling, opinion or prejudice existed as would prevent a fair trial if the tales jurors were selected in the manner pointed out by law.

### FORMER JEOPARDY.

The defendant, through his counsel, urges that he was in legal custody when the juror Hayes was discharged, as made apparent by the records, and that he may now claim to be dismissed from the cause and be no more prosecuted for the same offence.

We shall, in the first place, consider the decisions of this State on the subject.

In State vs. Paterno, 43 An. 514, the question was not similar to that under consideration.

The *nolle prosequi* upon which the accused based his plea of former jeopardy was entered during the empaneling of the jury. The

utterances of the court were not particularly directed to a question similar to that now presented and did not seek to determine when jeopardy begins.

In State vs. Costello, 11 An. 283, the court says that reason and authority sustain the right of the court to discharge a jury in cases of evident physical or moral necessity.

The court approvingly quotes from Justice Kent:

"Either the court must determine when it is requisite to discharge, or the rule must be inflexible, that after the jury are sworn and charged, no other jury can in any event be sworn and charged in the same. The moment cases of necessity are admitted to form exceptions, that moment a door is opened to the discretion of the court to judge of that necessity and to determine what combination of circumstances will create one." And refers also to Justice Story, who lays down a similar doctrine.

The jurisprudence of our State, says the court, is in conformity with these views.

In State vs. Deskin, 34 An. 919, after three jurors had been sworn and accepted, the trial judge, over the objection of the prisoner, propounded to each of the sworn jurors the usual questions on that subject, and two of them answering that they had scruples, they were excluded for cause.

The court's action was sustained on appeal. The decision is guarded and manifests a desire not to extend the principle too far, in the direction of the court's discretion to judge of the necessity of discharging a juror after he has been sworn and accepted.

The court says in that case:

"We think it would be a mockery of common sense to hold that the court would be bound to close its ears to the information and to permit the trial to proceed before an incompetent jury, who could not find an unqualified verdict in favor of the State under any circumstances, however clearly the law and the facts might sustain and require it."

In State vs. Moncla, 39 An. 868, after the twelve jurors had been selected and empaneled, one of the number announced that he was sick. The judge ordered the discharge of the juror and directed the sheriff to call another juror in his place. Defendant's twelve challenges having been exhausted, defendant objected to the discharge of the juror.

The court decided that it was competent for the trial judge to add another juryman.    The court in that case says:

"It is difficult to conceive of any reason why a different rule should prevail if a sworn juror should be taken sick when the eleventh juror is sworn, than if his sickness should happen after the twelfth juror had been sworn, and before any other proceedings had been taken.

"We should be loth to recognize so flimsy a distinction."

In Thompson and Merriam, Sec. 273, the doctrine is announced that the court is not bound to suffer the case to proceed after the jury have been empaneled, when informed of the fact going to the disqualification of a juror from which it is probable that the verdict may be set aside.

That the obnoxious juror may be excluded, and that too although he has been sworn, if no evidence has been introduced.    The prisoner can avail himself of the plea of once in jeopardy, only under such circumstances as would enable him to sustain the plea of *autre fois acquit* or convict.  State vs. Blackman, 35 An. 484.  State vs. Ritchie, 3 An. 715.

Mr. Wharton announces that "in Illinois it was held correct, in a capital case, to strike off a juryman after the jury were sworn on the ground that he was an alien.

"The same course has been taken in Pennsylvania in a case where the court, after the jury had been sworn, struck off a juryman on the ground that he was incompetent from irreligion or prejudice.

"It is not contended that this power is given to the court to be exercised arbitrarily or without good cause to believe that interference is necessary to prevent great injustice to one side or the other.

"It is to be used alike for the protection of the public and for the security of the prisoner in his right to an impartial trial; alike when the juror is so biased either against the prisoner or against the government that he is disqualified to serve on the panel."    See also Commonwealth vs. McCormick, 39 American Rep. 423.

Jeopardy can not begin before the case is opened before the jury; nor before the indictment is read or the examination into the case begins.    At what point thereafter it begins it is not necessary to decide in this case.    Mr. Wharton says that however discordant the cases may be as to what necessity justifies a discharge, they unite in the position that until the jury are "charged" with the

offence on an issue duiy framed, that is to say, until the jury is sworn, and the case committed to them, the jeopardy does not begin. Until this period the defendant is not technically in jeopardy. Even a juror who is found to be incompetent after swearing, but before opening the case, may be set aside without vitiating the procedure.

The accused had not been placed in jeopardy and has no right to his discharge on that ground.

The court, in State vs. Castello, 11 An. 283, emphatically announces that an accused is not put in jeopardy upon the mere empaneling of a jury, before a word of testimony has been heard against him and before the jury has received any information concerning the charge against him by reading the indictment.

### REFUSAL TO PERMIT FILING OF APPLICATION FOR REHEARING.

The filing of an application for a rehearing on the overruled motion for his discharge on the ground of former jeopardy was refused.

On appeal it is manifest that the defendant's application could not be entertained.

Errors may be recalled and corrected at any time when apparent.

The defendant can not, as a right, have points arising during the trial reconsidered that have been fully argued by counsel and have received ample consideration from the court.

He has ample opportunity at subsequent stages of the case to be heard anew.

*Appeal.*—The defendant also moved for an appeal, averring that he had a right to his acquittal after the juror Hayes had been removed from the panel.

And that this right having been refused, from the order of refusal he desired an appeal, for which he applied.

The issues of a case can not thus be divided.

They are now, in proper time, before the courts after trial.

Any appeal prior to that taken would have been premature.

### REMOVAL OF THE JUROR FROM THE PANEL.

In the bill of exceptions counsel in behalf of the defendant state that upon the application of the district attorney, against their objection upon hearing evidence as to the juror's competency, which

was reduced to writing and made part of their bill, U. A. Hayes, one of the jurors who had been sworn, was removed from the panel, and the district attorney proceeded in the selection of another juror.

The court's statement, made part of the bill, is that there was satisfactory reason for the removal; that the answers to questions put on the *voir dire* and evidence taken on the motion to discharge in respect to the subject of capital punishment was so equivocal and uncertain as to render him an unfit juror. In another bill referring to the same testimony he says that his statements were inconsistent and untrue.

The testimony taken on the motion to exclude the juror shows that he swore on his *voir dire* to his not being conscientiously opposed to capital punishment.

Prior to his examination on his *voir dire*, but after he had been summoned as a tales juror, he said to several witnesses that he would not be accepted as a juror by the State for he was opposed to capital punishment.

When examined as a witness on the motion to exclude him as a juror, his answers did not satisfy the trial judge that he was not conscientiously opposed to capital punishment.

The question arises in this case, can a juror be challenged on moral grounds after he is sworn and just prior to opening the case before the jury by reading the indictment?

In reference to the moral character of a juror this court decided that the trial judge is authorized to exclude a juror from the panel if satisfied of his unfitness morally to serve. State vs. Lartigue, 29 An. 642.

The same principle is laid down in State vs. Barnes, 34 An. 396; People vs. Damon, 13 Wendell, —— 357.

Jeopardy not having attached, it was not too late in the stages of the case to exclude the juror.

The court was satisfied that the juror was not legally fit to discharge the duties incumbent upon him in a case in which the accused is charged with murder, and, therefore, exercised a sound discretion, after having heard testimony, in discharging this juror. If the authority could be exercised after the third juror of the panel had been sworn, as in the Disken case (34 An.), it could be exercised after the twelfth juror had been sworn, prior to the examination of witnesses.

If legal in so far as relates to the third or fourth juror, it follows that it is legal as relates to the juror last sworn, and at all times prior to jeopardy.

The purpose of the law and of the State is a fair trial, unaffected by bias or prejudice.

It must be made manifest that the juror has no conscientious scruples against capital punishment; that he entertains no opinion affecting his competency.

To be sure, says the court, in the case of the United States vs. Joseph Perez, 9 Wheaton, 579, the authority of excluding a juror should be used with the greatest caution, under urgent circumstances and for very plain and obvious causes.

The necessity for removal may be moral as well as physical. 11 An. 283.

In such a case the disqualifications having been discovered subsequent to the oath, before the opening of the case before the jury, the motion to remove the juror was properly allowed.

Mr. Wharton states that it has been ruled, after a juror has been sworn in chief and taken his seat, if it be discovered that he is incompetent to serve he may, in the exercise of a sound discretion, be set aside by the court at any time before evidence. And this may be done even in a capital case as well for cause existing before as after the juror was sworn.

The obnoxious juror may be removed, although he has been sworn, if no evidence has been introduced. Thompson and Merriam, Sec. 273.

### REFUSALS OF PEREMPTORY CHALLENGES.

The question comes up as to the right to peremptory challenges, and as to whether the trial judge was bound to restore challenges to the accused.

The issue presented upon this point is of great moment.

Its decision has occasioned us the greatest concern.

Had the juror testified on his *voir dire* so as to disclose all the facts and circumstances that were made known afterward, he would not have been accepted as a juror.

The court *a qua* became satisfied from testimony subsequently heard that he was incompetent.

Was the defendant deprived of any of his legal rights in this matter of challenges?

His challenges were exhausted prior to the examination of the twelfth juror on his *voir dire;* had the juror made the statement which was subsequently disclosed he would have been discharged, and the accused would have been without a peremptory challenge to oppose to any juror subsequently called, as he was when another juror was called to serve in his place.

To this stage of the case the jurors had been regularly sworn and accepted.

To swear them a second time so as to allow twelve more challenges would have increased the number of challenges to more than twelve in empaneling the jury.

The language of the court in Stone vs. The People, 2d Scammon, p. 330 (Illinois), is clear and emphatic.

The juror was withdrawn for incompetency, being an alien.

The trial had commenced and witnesses for the prosecution had been sworn. The remaining eleven jurors were all competent, says the court, in that case and had all been chosen and accepted as well by the prisoner as the prosecutor—that it would have been irregular to have discharged them without his consent. It would have deprived the prisoner of a right secured to him, and which had been consummated under the law. That the court by withdrawing the incompetent juror corrected the error to the extent occurring and could go no further; that the case is *sui generis,* and should be decided on principles of analogy.

"Why is a court, for the ends of justice, and where manifest error exists for the act, authorized to discharge a jury? And if a whole jury may, in such a case, be discharged, why not set aside a person improperly selected and sworn?

"That no injustice has been done; no law has been violated. That the rights of the prisoner have not been infringed; the course is agreeable to justice and we can perceive no wrong in the mode adopted."

In this case the accused was indicted for murder and the judgment affirmed.

In the case of State of Nevada vs. Pritchard, 16 Nevada, p. 102, this case is approvingly referred to, and the court held that an incompetent juror, after the jury is sworn, may be discharged with-

out a necessity for the discharge of the eleven remaining competent jurors.

In a Tennessee case, that of Taylor vs. The State (Lea, Vol. II, p. 718), the court held that no serious argument had been submitted against the propriety of the discharge, but that the point was made that the court should have at the same time discharged all the jurors, because of the fact that the incompetent juror had associated with the residue of the panel for two days. That the court might have discharged the entire jury, if, in the exercise of his discretion, he had thought the ends of justice required such action. That the question was whether the trial court was compelled by law to discharge the jury merely because one of the jury had previously formed and expressed an opinion adverse to the defendant? That the defendant did not object to the other jurors because of their association with the incompetent juror, nor ask for their discharge, nor offer to show that anything improper had passed between them and the discharged juror.

" That upon principle, in the absence of anything else, the mere association of selected jurors with one of their number who had formed and expressed an opinion as to the guilt of the defendant would no more render them incompetent than such association previous to the trial; that no decision has been cited holding otherwise."

See also Ray vs. State, 4 Texas, 454.

The twelfth juror in that case (4 Texas) was excluded some time after the opening of the case and hearing of testimony by the jury.

The case is cited as an additional decision in support of the ruling excluding the juror before evidence had been heard, and not at all with reference to ousting a juror after the indictment has been read to the jury and evidence heard.

Courts have gone to the extent of holding that—

" Where a case has been tried by an impartial jury, although the judge, on the application of one of the parties and against the consent of the other, may have rejected a juror for cause of questionable sufficiency, such rejection does not afford a ground of complaint if justice has been done in the premises. In other words, while disallowance of a cause of challenge will work a reversal of the judgment, an improper allowance of a cause of challenge will not necessarily have this effect. A qualified juror may be rejected, and still a jury of lawful men, against whom there is no objection, may be

State vs. Nash and Barnett.

obtained.    A party is entitled to a lawful jury, but he is not under all circumstances, as a matter of right, entitled to have the first juror called who has all the statutory qualifications." Thompson and Merriam, p. 298.

We do not base our conclusion on this principle of practice, for in the case at bar the court's ruling appears supported by a preponderance of evidence establishing cause for removal of the juror.

If there was no good ground of complaint when the cause of removal was of "questionable sufficiency," there is surely none when the trial judge states as part of one of the bills on the subject: "The court in its reasons said that the discharge was based on sufficient reasons, as would appear of record.   In addition, I have to say this record shows incontestably that this juror had said out of court that he was opposed to capital punishment, and in court has sworn just the reverse.   It does not matter whether this opposition was conscientious or otherwise, or that he, on examination, attempted to explain it on metaphysical or other grounds—it suffices to say that he swore falsely, for both statements can not be true."

This court in two cases—State vs. Moncla, State vs. Disken— affirmed the rulings allowing a juror to be withdrawn after he has been sworn.

In the former the peremptory challenges had been exhausted and the jury sworn, when another juror was called to serve in the place of the juror withdrawn.   In the case at bar the juror was excluded for cause at a later stage in empaneling the jury, and before jeopardy attached.   As precedents these cases have a bearing upon the issues presented.

### REFUSAL TO REDUCE EVIDENCE TO WRITING.

The next ground of objection is to the ruling in refusing to have reduced to ,writing the evidence relating to an alleged overt act. The defendant asked that the testimony of a number of witnesses, including his own, be reduced to writing in order that it might be made part of the record for the purpose of showing who began the attack in the difficulty, and to lay the foundation for the introduction of threats, communicated and uncommunicated, and to introduce evidence of the character of the deceased as that of a dangerous, quarrelsome and vindictive man.

The following is the court's statement in the bill of exceptions:

"So far as concerns the testimony of the witnesses offered to show whether accused or deceased began the attack, it is sufficient to say that these witnesses actually testified before the jury on this point, but the court did refuse to permit their evidence to be reduced to writing and refused to receive evidence of communicated threats or bad character until some overt act was proved, which was not done."

This court has repeatedly exercised the constitutional authority of reviewing the finding or ruling of district judges on questions of blended law and facts.

This authority is limited so as not to embrace within its scope the review and determination of facts touching the merits of the prosecution.

The record discloses a positive solemn statement of the district judge that no overt act was proven.

That is his reason for the refusal to reduce the evidence to writing.

## NEW TRIAL.

At the risk of repetition we will give consideration again to an important point, already decided, which is presented in this motion.

The other grounds of the motion also were previously presented and decided.

It relates to the alleged "overt act" on the part of the deceased at the time of the killing and the refusal of the trial judge to reduce the testimony to writing and made part of the record for the purpose of enabling the Supreme Court, in the event of a conviction, to pass upon the question as to whether there had been proof of an "overt act" upon the part of the deceased at the time of the killing, and before the defendant made any assault upon the deceased, and for the purpose of authorizing the defendant to introduce evidence of threats to kill defendant, and of other personal violence made by the deceased just prior to the killing and which were communicated, it is alleged, to the defendant, and of other threats not communicated to the defendant, all for the purpose of laying the foundation to the admission of testimony.

The district judge, passing upon the point presented anew in the motion for a new trial, says:

"If the evidence was offered to show that deceased began the attack, or did some overt act to carry out his threats, the evidence failed to prove to the satisfaction of the court that deceased com-

menced the attack or did any overt act or made any demonstration of an attack.

" There was some evidence tending to show a hostile demonstration on the part of the deceased, yet it appeared to the court from all the facts and circumstances, and specially from the testimony of three persons   *   *   *   who were eye-witnesses of the affray and saw it from its inception to its close, that no hostile demonstration by deceased had been proved."

### In Arrest of Judgment.

The grounds of this motion have been considered and decided.

They presented no undecided points.

The verdict was rendered and the sentence pronounced after a legal trial.

It is therefore ordered, adjudged and decreed that the verdict, sentence and judgment are affirmed.

### On Application for Rehearing.

Nicholls, C. J.   Upon an application by the defendant for a rehearing, ably presented and forcibly argued, we carefully reconsidered the grounds upon which we rested our opinion. This re-examination confirmed us in the correctness of our views, save upon one subject, as to which we requested and have heard oral argument. The questions reargued are contained in and covered by several bills of exception.

After the jury had been empaneled and sworn and the indictment had been read, the defendant's counsel asked the court that "all the evidence material to the following points be reduced to writing and made part of the record, to-wit: For the purpose of showing an overt act upon the part of the deceased at the time of the killing and before any assault was made by the defendant. For the purpose of laying the foundation for the introduction of evidence of communicated threats.   For the introduction of uncommunicated threats.   For the purpose of introducing evidence of the general character of the deceased as a dangerous, violent and quarrelsome man.   For the purpose of applying the evidence so taken to special charges to be asked for by the defendant when the court should come to charge the jury.   And upon all collateral questions that might arise during the progress of the trial affecting the admis-

sibility of evidence, and upon all rulings by the court founded on evidence."

The district judge refused the request on the ground "that in criminal trials all the proceedings, except the indictment and charge to the jury, are conducted orally, and the accused has no right to require the testimony to be taken down in writing. State vs. Duncan, 8 Rob. 562, and I (the district judge) am not referred to any law which compels the court to depart from this mode of procedure, even for the special purposes mentioned."

To this refusal the defendant duly excepted.

The case quoted by the district judge (State vs. Duncan) is one in which an attempt was made to have the testimony which went to the jury reduced to writing. The statement made by the judge, that in a criminal case testimony can not be taken in writing for any of the special purposes mentioned, was too broad, but his action in over-ruling the motion in the form in which and at the time it was made was correct. Defendant had no right to make the request in advance of the offer of the witnesses by whom he expected to establish the facts upon which he was relying, and especially did he not have the right to virtually impose upon the judge the duty of selecting from the whole mass of the testimony those parts which he desired to preserve in writing.

At a later stage of the case, after the State had closed and before the defendant had begun the introduction of evidence in his defence, he asked that the testimony of several witnesses, including himself (naming them), should be reduced to writing in order that it might be made part of the record in the case for the purpose of showing who began the attack in the difficulty on the occasion in which the deceased was killed, and for the purpose of laying the foundation for the introduction of threats, communicated and un-communicated, and for the purpose of introducing evidence of the character of . the deceased as that of a dangerous, quarrelsome and vindictive man. This application was refused, the judge stating "the reasons for not reducing the testimony to writing, and for re-jecting evidence to prove communicated threats and the desperate and dangerous character of the deceased, without proof of some overt act or hostile demonstration on his part, have already been given in other bills, and are referred to as reasons for the ruling in the instant one. So far as concerns the testimony of the witnesses

14

offered to show whether accused or deceased began the attack, it is sufficient to say that these witnesses actually testified before the jury on this point, but the court did refuse to permit their evidence to be reduced to writing, and refused to receive evidence of communicated threats or bad character until some overt act was proved, which was not done."

In one of the bills of exceptions to which the judge refers for his reasons, he said, in excluding testimony offered to prove uncommunicated threats: "The evidence failed to prove to the satisfaction of the court that deceased commenced the attack, or did any overt act or made any demonstration of an attack. There was some evidence tending to show a hostile demonstration on the part of the deceased, yet it appeared to the court from all the facts and circumstances, and specially from the testimony of three persons (naming them) who were eye-witnesses of the affray, and saw it from its inception to its close, that no hostile demonstration had been proved. Whether it had or not been proved was a question to be decided by the court alone, which is necessarily vested with the discretion to disregard testimony it deems unworthy of belief. State vs. Ford, 37 An. 443; State vs. Janvier, 37 An. 644; State vs. Jackson, 37 An. 896; Schwartz vs. Crescent City R. R. Co., 30 An. 20."

In another bill refusing to allow testimony of communicated threats the judge said: "It is true that some evidence was offered to show an overt act and hostile demonstration on the part of deceased, but this testimony for reasons to be stated hereafter was disregarded by the court as unworthy of belief." Repeating the declaration made before by him that whether a foundation had been laid for receiving the rejected testimony was a question to be determined solely by the court, which is necessarily vested with discretion to disregard testimony it deemed not worthy of belief, the judge proceeded to recite and analyze the testimony given in the case from which he drew his conclusions on which his rulings were based.

In his motion for a new trial, defendant, among other reasons upon which he grounded the same, relied upon the rulings of the judge in the matter just referred to, and the bills of exceptions taken thereto. The new trial was refused. In his reasons for refusing, the district judge in alluding to the decisions of this court in State vs. Nelson, 32 An. 842; State vs. Seiley, 41 An. 143, and that in this case on the first appeal, said: "The rulings in those cases were

made upon questions purely collateral to the main issue, upon the decision of which they had no bearing whatever. It did not require the court to go into an examination of any evidence touching the merits of the prosecution. It was not called upon to have or express an opinion touching the weight of the dying declarations, and whatever might be the conclusion as to the competency *vel non* of a juror that conclusion could not affect the result of the trial. Hence the reduction of the testimony on these collateral points to writing, although it was clearly an innovation upon the ancient practice of the courts and avowedly excused on the ground of convenience, could produce no greater harm than to prolong and increase the costs of the trial. But where it is proposed to extend this rule so as to embrace evidence going directly to the merits, to proceedings arising in the course of the trial before the jury, and to review the findings of the judge on questions of fact, the determination of which is necessarily confided to his discretion as a basis for his rulings on the admissibility of testimony, we may well call a halt. This case illustrates the necessity of calling a halt. Defendant claims the right to have all the evidence reduced to writing which bears upon the fact of an overt act."

" The fact *vel non* of an overt act is a point of vital importance to the result of the prosecution. It is visceral in its nature, for upon it depends the guilt or innocence of the accused. He pleads self-defence, which admits the killing, but excuses it on the ground that it was done to protect life. To maintain this plea he must show an actual assault at the time of the killing (State vs. King, 22 An. 454), made under such circumstances as denoted a present intention to take life or do great bodily harm (State vs. Swift, 14 An. 827). An actual assault with a deadly weapon, with apparent intent to kill, made at the time of the homicide, is the overt act known to the law, and proof of such act is essential to self-defence (Ford Case, 37 An. 444)."

" Any inquiry into the existence of this act necessarily involves an inquiry into the merits of the prosecution, and if the right to have the testimony on this point reduced to writing be conceded, it must be conceded on every other disputed point. Again, if defendant has the right to have this evidence in writing before the appellate court, the latter must have the correlative right to pass upon the evidence and judicially decide upon its sufficiency to establish

the fact essential to conviction or acquittal.  It would in that event have the right to decide that an overt act had been proved, and if it did so decide, it would unquestionably say to the jury, "Your verdict is wrong; it is contrary to the law and the evidence, and for that reason we will set it aside, and inasmuch as defendant has established his plea of self-defence at this trial, the jury on the next trial is instructed to acquit should the same evidence be then produced."

If the defendant has any cause of complaint in this case, it is that under its facts he was entitled to introduce testimony to prove communicated and uncommunicated threats and the dangerous character of the deceased, that he has been unjustifiably deprived of that right, and as the effect thereof he has been legally injured. The objections urged by him to the action of the court in refusing to permit the reduction of certain testimony to writing are merely incidental to and in aid and support of the real grievance which is set up.  If in this State evidence as to communicated and uncommunicated threats and as to violent character became *ipso facto* admissible by the fact that one or more witnesses testified directly as to the existence of an overt act on the part of the deceased, this case would present no difficulty whatsoever independently of any question of the reduction of the testimony to writing, for it is conceded by the district judge that there was such testimony, but the practice in Louisiana has not been to permit evidence upon those points to be introduced and go to the jury simply because one or more witnesses may have given testimony to the effect that the deceased had committed an overt act.  The practice has been for the district judge to determine whether or not there was in the evidence in the case as a whole, evidence which would tend and go to establish *legally* the overt act, and upon his conclusions on that point has been made to depend and rest the admissibility of the testimony.

In dealing with that question the right of the judge to consider the credibility of the different witnesses has been repeatedly recognized by this court.  It may be that this practice lodges a power too great in the judge and works wrong to accused parties, as there is great difficulty in reaching and reviewing the action of the district judge.  It may be as *res nova* that it would have been better to have held that the moment one or more witnesses testify to an overt act that testimony of threats and character should *ipso facto* be admis-

sible and should go to the jury, to be weighed and determined by it with other circumstances of the case, but certainly since the Ford case that has not been the practice. The right to have this particular kind of testimony admitted is not in this State considered absolute. It is only exceptionally admissible, and the condition precedent upon which it is admissible is that the judge should have ruled that under the evidence as a whole the question of the overt act had become a *relevant* fact in. the case. Defendant's counsel was well aware of the legal position on this point, and hence came his efforts to place matters in a shape such as to enable us to reach and review the conclusions of the district judge.

Has he accomplished his purpose?

The first and proper place for us to seek for information as to whether defendant has been aggrieved by the exclusion of testimony as to threats and character is in the bill of exceptions reserved upon the ruling of the judge on that particular question.

An examination of that bill shows that the judge admits and declares that Barnett and one Gardner had testified that immediately upon the entrance of Nash (the defendant herein) into a station where the deceased was standing, the latter at once fired a pistol at him, and Nash's fire was a return fire. He, however, declares that Gardner is a relative of the defendant, and Barnett is now under indictment, charged jointly with the defendant with the murder of the deceased McCort, and he declares them, in his opinion, unworthy of belief. He further states that their testimony was positively contradicted by three reputable witnesses who saw the whole affair from beginning to end. The judge, as we have before said, gives a statement of different facts, sworn to on the trial, and applying the testimony of Barnett and Gardner to these facts, and then the testimony of the other three witnesses to these facts, declares that, in his opinion, there was no such evidence of an overt act as would justify the introduction of testimony as to threats or character. Taking as true the statements made by the judge *as to the evidence,* we discover no *error of law* in his ruling. But, says the defendant, we ought not to take this statement as to the evidence as conclusive; that in point of fact it is erroneous, and had he been permitted to do what he unsuccessfully attempted to do in the lower court—taken down the testimony of Barnett and Gardner in writing—that testimony, when brought up, and if brought up, would have established affirmatively

the incorrectness of the statements; that we must assume so for the purposes of this case.

We do not see that " *writing* " could or would more directly and positively disclose what those witnesses swore to than the admissions of the judge. Those witnesses, beyond question, swore that the attack was begun by the deceased's shooting at McCort. There is no difference of opinion between the district judge and the counsel on that point. The divergence between them commences as to the effect of that testimony. Counsel for defence has overlooked the fact that whilst he offered to take down in writing what his own two special witnesses might swear to, he did not, at the same time, attempt to have taken down that of the three witnesses whom the judge refers to, and upon whose testimony he mainly formed his opinion. It is not claimed that the recital by the judge of what those three witnesses swore to was not absolutely correct, nor that the various other facts to which the judge alludes were not positively established. We must assume that, so far, at least, as the testimony *going to disprove the overt act was concerned*, the judge's statements are true, and in reaching any conclusion as to his rulings we could not ignore his statements. We certainly could not exclusively consider what *defendant's witnesses, one or more*, may have sworn to and *disregard what the State's witnesses swore to*, for we would take a one-sided view of the situation by such a course.

If we assume in this case that the judge had *permitted* the evidence of Barnett and Gardner to have been taken in writing, and he had for the purposes of defendant's exception embodied that testimony in full in the bill, *leaving the remainder of the bill just as it is*, in what way would defendant's cause be advanced? We would still have before us the judge's statements as to the evidence on the other side of the question, as to the correctness of which there would be no issue, and we would be forced on the whole question to adjudge the judge's course not to be error. Had defendant controverted the statement of the judge as to what the three witnesses whose testimony was unfavorable to defendant had said, and had he endeavored unsuccessfully to have had that testimony taken down, his position would have been much stronger than it is. That testimony for obvious reasons was not sought to be perpetuated. Assuming that the judge should have permitted the reduction of Bar-

nett's and Gardner's testimony to writing and that he erred in declining to do so we would still have a case of error without injury, for on the showing made in the bill of exception we would have to maintain the exclusion of the testimony as to threats and character.

In the case at bar all the evidence on the subject of the overt act went before the jury—and as in spite of the testimony of Barnett and Gardner the jury returned an unqualified verdict of murder, it is evident that it must have placed on their testimony the same estimate that the judge did. This fact is not of course conclusive, but it goes far to sustain the opinion of the judge as to the credibility of those witnesses. Testimony as to threats and character are not introduced here to go to establish the overt act, but the overt act having been proved this testimony is permitted to be introduced to supplement the other evidence in the case.

For the reasons herein assigned our former judgment must remain as it was and the rehearing asked for is refused.